OPINION
{¶ 1} Defendant-appellant Paul Harrington, Jr., appeals from his conviction and sentence, following a guilty plea, on one count of trafficking in cocaine in an amount exceeding 1,000 grams, a first-degree felony. Harrington contends that his plea, theresult of a plea bargain, was the product of a mutual mistake of law, because he *Page 2 
believed that as a result of the State's agreeing to dismiss a major drug offender specification, he was relieved of exposure to the possibility of an additional sentence therefor, but, as a result ofState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-586, which held that part of the statute unconstitutional, there was never any possibility of his receiving an additional sentence for the major drug offender specification.
 {¶ 2} Harrington also contends that his plea was other than knowing and voluntary because the trial court misinformed him that he would be subject to "up to" five years of post-release control, when, in fact, he would be subject to exactly five years of post-release control, no more, and no less. Harrington finally contends that his trial counsel was ineffective for having failed to clear up this misunderstanding.
 {¶ 3} State v. Foster, supra, was pending in the Ohio Supreme Court at the time that Harrington tendered his plea. One of the issues raised in that appeal was whether R.C. 2929.14(D)(3)(b) is constitutional. That was, therefore, an unresolved legal issue when Harrington tendered his plea. There is nothing in this record to suggest that Harrington (or the State, either, for that matter) was misinformed, or otherwise operating under a misconception concerning the status of this pending, unresolved issue of constitutional law. The uncertain outcome of a disputed legal issue, like the uncertain outcome of disputed factual issues, is an appropriate animating factor in plea negotiations. Therefore, we conclude that the record does not support Harrington's claim that his plea was not entered knowingly and intelligently in this regard.
 {¶ 4} We agree with Harrington that the trial court mis-spoke when it informed him that he would be subject to post-release control for up to five years. He was, nevertheless, advised that he would be subject to post-release control. He was also *Page 3 
clearly advised that the result of his plea would be the imposition of a mandatory, ten-year sentence. Under these circumstances, we conclude that the trial court substantially complied with Crim. R. 11, and that even if trial counsel's failure to have corrected the trial court fell below an objective standard of professional performance, it did not undermine confidence in the outcome of the proceedings sufficiently to satisfy the prejudice prong of Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 5} Harrington was charged by indictment with seven counts relating to the sale of cocaine. Two counts alleged the sale and possession, respectively, of powder cocaine in an amount exceeding 1,000 grams, both with major drug offender specifications. Two other counts alleged the sale of between five and twenty-five grams of powder cocaine. Three counts alleged the possession of criminal tools.
 {¶ 6} On October 28, 2005, Harrington entered into a plea bargain wherein he pled guilty to one count of trafficking in cocaine in an amount exceeding 1,000 grams, a first-degree felony carrying a mandatory sentence of ten years imprisonment, and all the other counts, as well as the two major drug offender specifications, were dismissed. Subsequently, Harrington was sentenced to ten years in prison and fined $10,000. From his conviction and sentence, Harrington appeals.
 II {¶ 7} Harrington's First Assignment of Error is as follows:
 {¶ 8} "MR. HARRINGTON WAS DENIED HIS RIGHT TO DUE PROCESS OF *Page 4 
LAW AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BECAUSE HIS GUILTY PLEA WAS NOT ENTERED KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY."
 {¶ 9} In support of this assignment of error, Harrington makes two arguments.
 A — Trial Court Substantially Complied with Crim. R. 11. {¶ 10} Harrington first argues that his plea was not knowing, intelligent and voluntary because he was misadvised by the trial court that he would be subject to "up to" five years of post-release control when, in fact, he would be subject to exactly five years of post-release control, no more and no less. In other words, Harrington contends that he was misadvised that there was a possibility that he would be subject to less than five years of post-release control, when, in fact, there was no possibility that the post-release control he would be subject to would be less than five years.
 {¶ 11} Crim. R. 11(C)(2)(a) requires that a trial court must ascertain that a defendant understands the maximum penalty involved before the court may accept a guilty plea. Substantial compliance with the Rule is sufficient. State v. Nero (1990), 56 Ohio St.3d 106, 108,564 N.E.2d 474. Post-release control is a part of the penalty for purposes of the Rule, and a complete failure to advise a defendant of the fact that he will be subject to post-release control is not substantial compliance with the Rule, and "could in some instances form a basis to vacate a plea." State v. Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, ]}28.
 {¶ 12} We held in State v. Perdue, 2004-Ohio-6788, Montgomery App. No. 20234, that a trial court's having advised a defendant that he "could" be subject to post-release *Page 5 
control when, in fact, post-release control is mandatory, was a failure of substantial compliance with Crim. R. 11(C)(2)(a) sufficient to require reversal. Here, the trial court did not mis-state that post-release control was a mere possibility, rather than a mandatory part of Harrington's sentence. Here, the trial court mis-stated that the term of post-release control was "up to" five years when, in fact, it was five years, period.
 {¶ 13} Under the circumstances, we conclude that the trial court substantially complied with the Rule. Harrington knew that by pleading guilty he would be subject to a mandatory ten-year term of imprisonment. The trial court clearly advised him of that inescapable consequence of his plea. Given the magnitude of this sentence, to which Harrington tearfully[1] referred when he said, at the sentencing hearing, "You know, ten years is a long time," we find it unlikely, in the extreme, that a mistaken understanding, on Harrington's part, that there was a possibility that his post-release control period might be less than five years, played any significant part in his decision to accept the plea bargain.
 {¶ 14} We conclude that this record fails to demonstrate that Harrington's plea was other than knowing, intelligent and voluntary as a result of the trial court's misstatement concerning the duration of post-release control.
 B — No Mutual Mistake of Law Demonstrated on this Record. {¶ 15} Harrington next argues that he and the State were laboring under a mutual mistake of law when he entered into the plea bargain. Besides the dismissal of the remaining six counts, the plea bargain included the dismissal of both of the major drug *Page 6 
offender specifications, one of which was attached to the count to which Harrington pled guilty, and one of which was attached to one of the counts that was dismissed.
 {¶ 16} R.C. 2929.14(D)(3)(a) requires the ten-year sentence that was imposed upon Harrington as a result of his guilty plea. R.C.2929.14(D)(3)(b) provides that:
 {¶ 17} "The court imposing a prison term on an offender under division (D)(3)(a) of this section may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years, if the court, with respect to the term imposed under division (D)(3)(a) of this section * * * makes both of the findings set forth in divisions (D)(2)(b)(i) and (ii) of this section."
 {¶ 18} The "major drug offender" specifications that were dismissed as part of the plea bargain implicated R.C. 2929.14(D)(3)(b), by alleging the facts that would permit the trial court to have made the findings set forth in divisions (D)(2)(b)(i) and (ii). R.C. 2929.14(D)(3)(b) was held unconstitutional in State v. Foster, supra, ]}83. Harrington is arguing that because he was unaware that R.C. 2929.14(D)(3)(b) was about to be held unconstitutional in Foster, he mistakenly believed that the part of the plea bargain involving the dismissal of the major drug offender specifications was of value to him when, in fact, it was of no value to him, since Foster would have invalidated any additional sentence as a result of those specifications.
 {¶ 19} State v. Foster, supra, involved an attack on those parts of the Ohio felony sentencing statutes that permitted a trial judge, in the absence of a waiver of the right to a jury trial, to make findings of fact that would affect the maximum sentence that can be imposed upon a defendant. There is nothing in this record to suggest that either Harrington, his attorney, or the prosecutor, were under any misapprehension concerning *Page 7 
the status of this unresolved constitutional issue involving the Ohio felony sentencing statutes.
 {¶ 20} It is a fact of litigation that there are occasionally disputes of law, as well as disputes of fact, the outcome of which is uncertain. The settlement of legal disputes, whether criminal or civil, necessarily involves compromising these disputes, despite the fact, or, more aptly, because of the fact, that their ultimate outcome is uncertain. If we accept Harrington's argument, then the plea bargain into which he entered would not have been possible. The State would have been ill-advised to enter into a plea bargain involving an outstanding, unresolved issue of constitutional law if it would be bound upon an ultimate resolution of that issue favorable to the State, but the defendant would not be bound upon an ultimate resolution of that issue favorable to the defendant.
 {¶ 21} This does not leave the parties unable to enter into a partial resolution of certain issues in the trial court, leaving other issues for resolution by a higher court. Had that been the mutual desire of the parties, then Harrington could have moved to dismiss the major drug offender specifications upon the constitutional grounds urged inFoster, and, if he obtained an adverse ruling on this motion, he and the State could have entered into a plea bargain involving a no-contest plea to at least one count and one specification, thereby preserving the adverse ruling on the motion to dismiss the specification.
 {¶ 22} Harrington cites State v. Ulrey (April 30, 1998), Cuyahoga App. No. 71705, for the proposition that a mutual mistake of law is grounds for the reversal of a plea bargain. In that case, unlike in the case before us, the record affirmatively demonstrated that the defendant, defense counsel, the prosecutor and the trial court all *Page 8 
mistakenly believed that the imposition of sentence as a result of the plea bargain would be governed by the sentencing law in effect before the 1996 revision to Ohio's felony sentencing law when, in fact, it was governed by the post-1996 law, which was more favorable to the defendant. Admittedly, the analysis in Ulrey indicates that the issue of law was not free from difficulty, just as the issue of law in this case, before Foster was decided, was certainly not free from difficulty. The critical difference though, is that the record in Ulrey affirmatively demonstrated that all of the actors were unaware that there was any question which sentencing law should be applied — they all thought that the pre-revision sentencing law, less favorable to the defendant, would be applied to his sentence, and that there was no issue of law to compromise.
 {¶ 23} It may be that in this case none of the actors were aware that there was even an issue concerning the constitutionality of R.C.2929.14(D)(3)(b), but we cannot presume that from this record. If the existence of the issue was truly not part of the calculus affecting the plea bargain, and if Harrington can present a plausible case that he would not have accepted the plea bargain had he known that there was an unresolved issue concerning the constitutionality of the statute, then he may petition for post-conviction relief, and make up a suitable record.
 {¶ 24} Harrington's First Assignment of Error is overruled.
 III {¶ 25} Harrington's Second Assignment of Error is as follows:
 {¶ 26} "MR. HARRINGTON WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO *Page 9 
CONSTITUTIONS."
 {¶ 27} Harrington predicates this assignment of error solely upon his trial counsel's failure to have corrected the trial court's misstatement, both orally at the plea hearing, and in the written petition form, that by pleading guilty he would be subject to "up to" five years of post-release control.
 {¶ 28} Reversal of a conviction based upon ineffective assistance of trial counsel requires a showing both: (1) that trial counsel's representation fell below an objectively reasonable standard; and (2) that trial counsel's failure was prejudicial. Strickland v.Washington, supra; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. The prejudice required has been said to necessitate proof "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley, supra, third paragraph of syllabus.
 {¶ 29} Even if we assume that Harrington's trial counsel's performance was deficient because of his failure to catch this error, we cannot find the requisite prejudice. In our view, for the reasons noted in Part II-A, above, the likelihood that the result of the plea hearing would have been different if Harrington had been advised that there was no chance that the post-release control period would be less than five years is negligible. On this record, we cannot find it to have been a "reasonable probability" that the result would have been different.
 {¶ 30} Harrington's Second Assignment of Error is overruled.
 IV {¶ 31} In a "Supplemental Brief" filed after the filing of the State's Answer Brief *Page 10 
and Harrington's own Reply Brief, Harrington asserts a third assignment of error, as follows:
 {¶ 32} "THE TRIAL COURT ERRED WHEN IT INCORRECTLY SENTENCED MR. HARRINGTON TO `UP TO' FIVE YEARS OF POST RELEASE CONTROL."
 {¶ 33} We accepted Harrington's Supplemental Brief as filed. In this assignment of error, Harrington notes that the termination entry provides that Harrington is subject to post release control "up to a maximum of 5 years," while a full five-year period of post release control is mandated by R.C. 2967.28(B)(1). He asks that the cause be remanded for re-sentencing to correct this error.
 {¶ 34} We do not presently decide what effect, if any, the above-quoted statement in the termination entry may have on the period of Harrington's post release control. We note that this error, if it is an error, cannot possibly prejudice Harrington. If the error has any legal effect at all, it would be to shorten Harrington's period of post release control, which would be to his advantage, not to his detriment.
 {¶ 35} Harrington's Third Assignment of Error is overruled as harmless. V {¶ 36} All of Harrington's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and WALTERS, V.J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio)
 Copies mailed to: *Page 11 
Stephen K. Haller/Elizabeth Ellis
Robert Alan Brenner
Hon. Stephen Wolaver
[1] The transcript of the sentencing hearing reflects that Harrington was crying as he made this statement. *Page 1