[Cite as *State v. Howard*, 2017-Ohio-8020.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  8-17-01

    v.

JAMES MICHAEL HOWARD,         O P I N I O N

    DEFENDANT-APPELLANT.

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  8-17-09

    v.

JAMES MICHAEL HOWARD,         O P I N I O N

    DEFENDANT-APPELLANT.

**Appeals from Logan County Common Pleas Court**
**Trial Court No. CR 16 01 0011**

**Judgments Affirmed**

**Date of Decision:   October 2, 2017**

APPEARANCES:

    *Joseph C. Patituce* **for Appellant**

    *Eric C. Stewart* **for Appellee**

**ZIMMERMAN, J.**

{¶1} This matter comes before us upon two consolidated appeals. Defendant-Appellant, James Michael Howard ("Howard"), brings these appeals from the Logan County Common Pleas Court judgments convicting him of two counts of Unlawful Sexual Conduct with a Minor and denying his motion to withdraw his plea. On appeal, Howard asserts that the trial court erred: (1) when it failed to instruct Howard of the maximum penalties of the charges to which he pled; (2) when it accepted Howard's guilty plea after improperly instructing Howard on sex offender registration requirements; (3) when it failed to instruct Howard of his Sixth Amendment right to a jury trial; and (4) when it denied Howard's motion to withdraw his plea. For the reasons that follow, we affirm the judgments of the Logan County Common Pleas Court.

*Factual Background*

{¶2} On December 17, 2015, Detective Mike Brugler ("Det. Brugler"), of the Logan County Sheriff's Office was contacted by Hardin County Sheriff Sergeant Scott Holbrook regarding sexual assaults that occurred in Logan County. (11/01/2016 Tr., Vol. II, at 194). Det. Brugler met with K.J., the alleged victim of the sexual assaults, the day following receipt of the report. (*Id.*). K.J. told Det. Brugler that Howard, her great uncle, had sexually assaulted her multiple times in the past. (*Id.*). According to K.J., the sexual assaults began when she was thirteen

(13) years old and occurred at Howard's residence. (*Id.* at 121). K.J. reported that Howard assaulted her by giving her massages in which Howard would touch her breasts, her inner thighs, and eventually her vagina and her buttocks. (*Id.* at 122-23). K.J. recalled a specific event, when she was thirteen, when Howard digitally penetrated her. (*Id.* at 124-25). K.J. reported that Howard's touching of her happened "a handful of times" when she was thirteen years old. (*Id.*).

**{¶3}** K.J. further told Det. Brugler that Howard's sexual assaults of her escalated as she aged, with Howard forcing her to perform oral sex on him when she was fourteen (14), and by forcibly digitally penetrating her vagina at age fifteen (15). (*Id.* at 129-30). Further, K.J. reported that Howard forced her to have vaginal intercourse with him at age sixteen (16). (*Id.* at 132). K.J. also reported that at age eighteen (18), Howard forced K.J. to engage in sex with Howard and another person. (*Id.* at 133). K.J. reported that Howard stopped sexually abusing her when she moved from Ohio to attend college. (*Id.* at 138).

**{¶4}** At trial, K.J. testified that many years after the abuse ended, she decided to contact law enforcement to report Howard's abuse because the prior sexual abuse was ruining her marriage. (*Id.* at 140).

**{¶5}** K.J. met a second time with Det. Brugler on December 21, 2015. At this meeting Det. Brugler instructed K.J. to contact Howard by phone. (*Id.* at 195). She did so and the call was recorded by Det. Brugler. (*Id.*). During the call, Howard

recounted with K.J. the sexual incident that involved the additional male, which occurred at a local hotel. (*Id.* at 150). Howard also admitted that his sexual abuse (of K.J.) started when she was "either 14 or 15." (*Id.*). At the conclusion of the call, Howard can be heard asking K.J. for a naked picture of her. (*Id.* at 156).

*Procedural History*

{¶6} On January 12, 2016, the Logan County Grand Jury indicted Howard on nine felony counts pertaining to sexually abusing K.J. Specifically, Howard was indicted on the following charges: Count I, Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2); Count II, Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2); Count III, Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2); Count IV, Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2); Count V, Complicity to Rape, a felony of the first degree, in violation of R.C. 2923.01 and R.C. 2907.02(A)(2); Count VI, Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2); Count VII, Complicity to Rape, a felony of the first degree, in violation of R.C. 2923.01 and R.C. 2907.02(A)(2); Count VIII, Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2); and Count IX, Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2). (Doc. No. 2). Howard pled not guilty to all charges.

**{¶7}** On April 18, 2016, Howard filed a motion to suppress in the trial court, and a hearing on the motion was held on May 19, 2016. The trial court denied the motion on May 24, 2016.

**{¶8}** On November 1, 2016 Howard's charges proceeded to a jury trial. However, at the close of the State's case-in-chief on November 2, 2016, a plea agreement was reached between the State and Howard. Howard's plea agreement with the State consisted of Counts I and II being amended to Unlawful Sexual Conduct with a Minor, in violation of R.C. 2907.04, both being a felony of third degree, with the remaining charges being dismissed.

**{¶9}** Because Unlawful Sexual Conduct with a Minor is not a lesser included offense of Rape, Howard executed a Waiver of Indictment along with a Petition to Enter a Plea of Guilty or No Contest, and pled guilty to the two counts of Unlawful Sexual Conduct with a Minor. (Doc. No. 71; 72; 11/02/2016 Tr., Vol. II, at 296).

**{¶10}** When he changed his plea, the trial court advised Howard that he would have to register as a Tier II sex offender, biannually for a period of 25 years.[1] (*Id.* at 292). The trial court further advised Howard that he would be subject to a mandatory period of five years of post-release control. (*Id.* at 291-92). The trial court journalized the change of plea proceedings through its judgment entry filed November 14, 2016. (Doc. No. 79).

---

[1] The trial court's advisement was pursuant to sex offender classification laws under the Adam Walsh Act.

{¶11} Thereafter, Howard's sentencing occurred on December 5, 2016, at which time the trial court sentenced him to five years in prison on each amended charge, consecutively, for an aggregate sentence of ten years in prison. (12/05/2016 Tr. at 11). The trial court again informed Howard that after he was released from prison, he would be subject to a 5-year period of post-release control, and further informed Howard of the potential penalties should Howard violate his post-release control. (*Id.* at 11-12). Howard's sentencing proceedings were journalized by the trial court in its entry filed on December 9, 2016. (Doc. No. 83).

{¶12} On January 3, 2017, Howard filed a motion to withdraw his plea and a notice of appeal. (Doc. Nos. 104; 106). The appeal was stayed pending the trial court's ruling on Howard's motion to withdraw his plea. Further, the State filed a motion with the trial court to reclassify Howard as a sex offender on February 16, 2017, so the trial court withheld its ruling on Howard's motion to withdraw plea until the completion of the reclassification hearing. (Doc. No. 116).

{¶13} On April 3, 2017, over Howard's objection, a reclassification hearing occurred in the trial court. The trial court re-classified Howard under Megan's law as a sexual offender on the two charges, wherein Howard received a ten-year registration requirement, as opposed to the twenty-five year registration period previously imposed.

{¶14} Thereafter, the trial court denied Howard's Motion to Withdraw Plea on April 5, 2017, and on April 21, 2017, Howard filed a second notice of appeal in Appellate Case Number 8-17-09. Thus, for purposes of our Appellate review, we have consolidated Howard's cases.

{¶15} From these judgments Howard timely appeals, and presents the following assignments of error for our review:

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED WHEN IT ACCEPTED APPELLANT'S GUILTY PLEA AFTER FAILING TO INSTRUCT ON THE MAXIMUM PENALTIES ASSOCIATED WITH SAID PLEA DURING THE CRIMINAL RULE 11 PLEA COLLOQUY.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED WHEN IT ACCEPTED APPELLANT'S GUILTY PLEA AFTER IMPROPERLY INSTRUCTING ON SEX OFFENDER REGISTRATION REQUIREMENTS DURING THE CRIMINAL RULE 11 PLEA COLLOQUY.**

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT APPELLANT OF HIS SIXTH AMENDMENT RIGHT TO A TRIAL BY JURY.**

### ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED IN DENYING MR. HOWARD'S MOTION TO WITHDRAW PLEA.**

**{¶16}** As an initial matter, we note that Assignments of Error I, II, and III are part of consolidated Appellate Case Number 8-17-01 and Assignment of Error IV involves consolidated Appellate Case Number 8-17-09.

**{¶17}** On appeal, Howard presents the following issues for our review: (1) whether the trial court committed reversible error when it accepted Appellant's guilty plea after failing to advise him of the maximum penalties that could be imposed in the event that he violated post release control; (2) whether the trial court committed reversible error when it accepted Appellant's guilty plea after improperly advising him of the sex offender registration requirements during the Criminal Rule 11 plea colloquy; (3) whether the trial court committed reversible error when it failed to instruct Appellant of his Sixth Amendment right to a trial by jury; and (4) whether the trial court erred when it denied Howard's request to withdraw his plea. Because assignments of error I, II, and III all pertain to alleged deficiencies with Howard's Crim.R. 11(C) plea advisements, we will address them together.

*First, Second, and Third Assignments of Error*

*Crim.R. 11(C)(2) Standard of Review*

**{¶18}** "Crim.R. 11(C)(2) imposes several requirements a trial court must perform before accepting a defendant's guilty plea in a felony case." *State v. Gaspareno,* 2016-Ohio-990, 61 N.E.3d 550, ¶ 48 (3rd Dist.). Specifically, it provides:

-8-

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2)(a)-(c).

{¶19} "'The rule is intended to ensure that guilty pleas are entered knowingly, intelligently, and voluntarily.'" *Gaspareno,* at ¶ 49 quoting *State v. Phillips,* 3rd Dist. Van Wert No. 15-12-02, 2012-Ohio-5950, ¶ 24. "'Criminal Rule 11(C)(2) clearly and distinctly mandates that the trial judge, before accepting a guilty plea in a felony case, inform the defendant of his rights as expressed in the rule and determine that he understands these rights and that he is making his guilty pleas voluntarily.'" *Id.* quoting *State v. Stewart,* 51 Ohio St.2d 86, 88, 364 N.E.2d 1163 (1977) quoting *State v. Younger,* 46 Ohio App.2d 269, 349 N.E.2d 322 (8th Dist.1975), paragraph two of the syllabus. "Failure to ensure that a plea is entered

knowingly, intelligently, and voluntarily renders its enforcement unconstitutional." *Id.* citing *State v. Engle,* 74 Ohio St.3d 525, 527, 1996-Ohio-179, 660 N.E.2d 450.

{¶20} The advisements under Crim.R. 11(C)(2) can be divided into constitutional requirements (found in Crim.R. 11(C)(2)(c)), and nonconstitutional requirements (found in Crim.R. 11(C)(2)(a) and (b)). *State v. Scarnati,* 11th Dist. Portage No. 2001-P-0063, 2002-Ohio-711, \*3. *Strict compliance* is required for the constitutional advisements of Crim.R. 11(C)(2)(c), and the failure to strictly comply with Crim.R. 11(C)(2)(c) invalidates a guilty plea. (Emphasis added). *Id.* To comply with the advisements under of Crim.R. 11(C)(2)(c), a trial court must inform a defendant that he is waiving: (1) the Fifth Amendment privilege against self-incrimination, (2) the right to a jury trial, (3) the right to confront accusers, (4) the right to the compulsory process of witness, and (5) the right to be proven guilty beyond a reasonable doubt. *Id.* citing *State v. Gruber,* 11 Dist. Lake No. 2000-L-031, 2001-Ohio-8898, \*4 citing *State v. Nero,* 56 Ohio St.3d 106, 107-08, 564 N.E.2d 474 (1990). And, "[p]rejudice is presumed if the court fails to inform the defendant of the constitutional rights listed in Crim.R. 11(C)(2)(c)." *State v. Thomas,* 3rd Dist. Mercer No. 10-10-17, 2011-Ohio-4337, ¶ 20. "A trial court's acceptance of a guilty or no contest plea will be affirmed only if the trial court engaged in meaningful dialogue with the defendant which, in substance, explained the pertinent constitutional rights, 'in a manner reasonably intelligible to that

defendant.'" *Id.* quoting *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph two of the syllabus.

**{¶21}** "'Pursuant to Crim.R. 11(C)(2)(a), a trial court is [also] required to inform an offender of a number of nonconstitutional issues, including the maximum penalty involved, before accepting a defendant's guilty plea." *State v. Fantauzzi,* 3rd Dist. Henry No. 7-11-16, 2012-Ohio-1136, ¶ 8 quoting *State v. Fleming,* 6th Dist. Ottawa No. OT-07-024, 2008-Ohio-3844, ¶ 10 citing *State v. Harrington,* 2nd Dist. Greene No. 06-CA-29, 2007-Ohio-1335, ¶ 11. And, as we have noted above, "[n]onconstitutional aspects of the plea colloquy are subject to review under a standard of substantial compliance." *Id.* citing *State v. Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12. "'Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of plea and the rights he is waiving.'" *State v. Francis,* 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 335, ¶ 48 quoting *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Furthermore, a defendant, who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made, must demonstrate a prejudicial effect of which the test is whether the plea would have otherwise been made." *Scarnati, supra.*

*Maximum Penalty Analysis*

*Criminal Rule 11(C)(2)(a)*

**{¶22}** In his first assignment of error, Howard asserts that the trial court erred when, prior to accepting his guilty plea, it failed to advise Howard of the maximum penalties that could be imposed if he violated his post release control. We disagree.

**{¶23}** R.C. 2943.032 is analogous to Crim.R. 11(C)(2)(a), and provides as follows:

> Prior to accepting a guilty plea or a plea of no contest to an indictment, information, or complaint that charges a felony, the court shall inform the defendant personally, that, if the defendant pleads guilty or no contest to the felony so charged or any other felony, if the court imposes a prison term upon the defendant for the felony, and if the offender violates the conditions of a post release control sanction imposed by the parole board upon the completion of the stated prison term, the parole board may impose upon the offender a residential sanction that includes a new prison term of up to nine months.

R.C. 2943.032.

**{¶24}** "The statutory right to receive the plea notification of post-release control, under R.C. 2943.032 * * *, is also similar to the nonconstitutional notifications of Crim.R. 11(C)(2)(a). * * * [W]hen giving the post-release-control notifications required by R.C. 2943.032 * * *, before accepting a guilty or no-contest plea, a trial court must also *substantially comply* with the statute and ensure that a defendant knows of the post-release-control consequences of his plea."

(Emphasis added). *State v. Gulley,* 1st Dist. Hamilton No. C-040675, 2005-Ohio-4592, ¶ 18.

**{¶25}** The record reveals the following colloquy that took place between the trial court and Howard at his plea hearing regarding the issue of post-release control penalties:

> **Trial Court: The charge is then amended to two counts of unlawful sexual conduct with a minor, felonies of the third degree. On this offense, the maximum prison sentence is five years on each count. There's a maximum fine of $10,000.** *After your prison sentence, you would be required to be on post-release control, what we used to call parole, under the supervision of the Adult Parole Authority for five years.* *** **Do you understand those maximum penalties and requirements of law?**
>
> **Howard:     Yes.**

(11/2/2016 Tr., Vol. III, at 292-93).

**{¶26}** Additionally, Howard signed and delivered to the trial court a "Petition To Enter A Plea of Guilty or No Contest" prior to formally pleading to the amended charges. (Doc. No. 71). The petition specifically advised Howard that he was subject to a mandatory period of five (5) years of PRC for a felony sex offense conviction pursuant to the following language:

> I understand that if I violate the terms and conditions of post-release control, the Adult Parole Authority may impose a more restrictive sanction, increase the term of post-release control up to the maximum term, or impose a prison term upon me as a sanction, not to exceed nine months at a time, with the total cumulative prison sanctions in increments of nine months, not to exceed 50% of the stated prison term originally imposed as part of the sentence. I further understand

-13-

that if I commit a new felony while under post-release control, I may receive a prison sentence for both the new felony and any post-release control violation, which shall be served consecutively.

(*Id.* at ¶ 19).  And, the plea colloquy between the trial court and Howard reveals that Howard read the petition, understood it, and reviewed it with his attorney prior to pleading.  (11/02/2016 Tr., Vol. III, at 287-88).  Specifically, the following exchange was held on the record between the trial court and Howard:

> **Trial Court: You've gone over this plea petition with your attorney, Mr. Triplett?**
>
> **Howard: Yes.**
>
> **Trial Court: And do you have any questions about anything that's in that plea petition?**
>
> **Howard: No.**

(*Id.*).

{¶27} In *State v. Montgomery,* the Ohio Supreme Court acknowledged that "when a trial court engages in a full Crim.R. 11 plea colloquy with the defendant and address all of the constitutional rights waived by the plea, a 'reviewing court should be permitted to consider additional record evidence to reconcile any alleged ambiguity in the colloquy.'" *State v. Montgomery,* 148 Ohio St.3d 647, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 43, *reconsideration granted in part,* 147 Ohio St.3d 1438, 2016-Ohio-7677, 63 N.E.3d 157, ¶ 43 quoting *State v. Barker,* 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 24.  Accordingly, to determine whether a plea

colloquy is sufficient to ensure that a defendant entered an intelligent, knowing, and voluntary plea, the reviewing court may examine the totality of the circumstances surrounding the plea colloquy.

{¶28} We find that the trial court substantially complied with Crim.R. 11(C)(2)(a) in accepting Howard's guilty plea with respect to the advisements of PRC penalties. During its oral advisements, the trial court made sure that Howard was aware that he was subject to five years of mandatory PRC upon release from prison. And, as set forth in the plea form, Howard was advised of the exact penalties that could result if he violated his post-release control. Thus, under the totality of the circumstances herein, Howard was advised of the maximum penalties relative to his amended charges.

{¶29} Accordingly, we overrule Howard's first assignment of error.

*Sex Offender Registration Requirement Analysis*

{¶30} In his second assignment of error, Howard asserts that the trial court erred when it accepted Howard's guilty plea after it improperly instructed Howard on his sex offender registration requirements. Specifically, Howard contends that the trial court erroneously informed him of his registration requirements under the Adam Walsh Act, instead of registration requirements under Megan's Law. Howard argues that because all parties were acting on an erroneous understanding of the applicable law at the time of the plea, his plea is invalid and must be vacated.

{¶31} During his plea, Howard was informed by the trial court that under the Adam Walsh Act, he would be required to register as a Tier II sex offender, twice a year, for 25 years. (11/02/2016 Tr., Vol. III, at 292). However, after Howard was sentenced, it was discovered that the amended charges that Howard plead guilty to fell under Megan's Law, not the Adam Walsh Act. (04/03/2017 Tr. at 3). Thus, the State requested that the trial court conduct another hearing to reclassify Howard. All parties agreed that there was an error in Howard's original classification, and the State proposed that Howard should have been classified as a sexually-oriented offender (as opposed to a Tier II sex offender). (*Id.* at 4). The trial court granted the State's reclassification request and Howard was reclassified as a sexually-oriented offender, and subject to register (as a sex offender) once a year for ten (10) years, as opposed to twice a year for twenty-five (25) years. Howard assertion on appeal is that he wouldn't have pled had he known of the proper registration period under Megan's Law.

{¶32} In support of his proposition that his plea was invalid and must be vacated, Howard directs us to our decision in *State v. Bush,* in which we determined that the defendant's guilty pleas were not entered knowingly or intelligently, and thus, the defendant was entitled to a post-sentence withdrawal of his guilty pleas. *State v. Bush,* 3rd Dist. Union No. 14-2000-44, 2002-Ohio-6146, ¶ 1. Relying on the Ohio Supreme Court's decision in *State v. Engle,* we found that "when a

defendant enters and a court accepts a guilty plea with both acting on an erroneous understanding of the applicable law, the plea is not made knowingly and intelligently." *Id.* at ¶ 11, citing *Engle,* 74 Ohio St.3d 525, 527-28, 1996-Ohio-179, 660 N.E.2d 450.

**{¶33}** However, unlike the defendant in *Bush,* Howard has suffered no prejudice from the trial court's original sex offender advisement. In *Bush,* the defendant was informed that he would be eligible to apply for judicial release after serving thirty (30) days in prison only to discover that, due to the length of the sentence imposed, he was not eligible for judicial release until after completing five years of the sentence imposed. *Id.* Hence, the defendant in *Bush* suffered actual prejudice from the trial court's erroneous explanation of the law. Howard, on the other hand, has suffered no prejudice because his corrected sex offender classification involved a registration period significantly less in time than what he originally was told. As such, Howard has not demonstrated the prejudicial effect upon him in challenging that his guilty plea was not knowingly, intelligently, and voluntarily made. *Scarnati,* 11th Dist. Portage No. 2001-P-0063, 2002-Ohio-711, *4.

**{¶34}** Furthermore, in *State v. Williams,* the Ohio Supreme Court analyzed enhanced sex offender classification requirements imposed by a trial court retroactively. *State v. Williams,* 129 Ohio State.3d 344, 2011-Ohio-3374, 952

N.E.2d 1108, ¶ 20. Finding that the trial court erred when it imposed the incorrect sex offender classification, the Supreme Court "reverse[d] the judgment * * * and remand[ed] the cause for *resentencing under the law in effect at the time Williams committed the offense*." (Emphasis added). *Id.* at ¶ 23. In this case, Howard has already been reclassified under the law in effect at the time he committed the offense as required under *Williams.* Thus, the appropriate remedy (under *Williams*) has already occurred herein.

{**¶35**} Accordingly, we overrule Howard's second assignment of error.

*Right to a Jury Trial Analysis*

{**¶36**} In his third assignment of error, Howard asserts that the trial court erred when it failed to instruct him of his Sixth Amendment right to a trial by jury. Specifically, Howard asserts that the trial court failed to strictly comply with Crim.R. 11 when it failed to reasonably inform him of his right to a trial by jury when he changed his plea. We disagree.

{**¶37**} Unlike the previous assignments of error, Howard's third assignment of error involves a constitutional right. *Scarnati,* 11th Dist. Portage No. 2001-P-0063, 2002-Ohio-711, *3. Since this assignment of error involves a constitutional right, the trial court must strictly comply with the requirements of Crim.R. 11(C)(2). *Id.* "However, failure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the

constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights *in a manner reasonably intelligible to that defendant*." (Emphasis added). *Ballard, supra.*

**{¶38}** A review of the record reveals that the following exchange took place between Howard and the trial court prior to Howard entering his guilty pleas:

> **Trial Court: That, when you plead guilty, the balance of the trial would not go forward and any additional rights that you may have had today are waived or given up. That's your right to confront the witnesses, your right to subpoena witnesses, your right to testify on your on [sic] behalf, your right not to testify and the prosecutor can't comment on that fact to the jury. As we've stated several times here, in this situation, the State has to prove all the elements of the offense beyond a reasonable doubt. Do you have any additional question about your rights here?**
>
> **Howard: No.**
>
> **Trial Court: Do you understand that the balance of the trial will not go forward and the Court can sentence you as if the jury had convicted you of these two charges?**
>
> **Howard: Yes.**

(11/02/2016 Tr., Vol. III, at 293). The record is clear that when Howard entered his guilty pleas to the amended charges, he was in the middle of a jury trial. (*Id.* at 286). And, in the trial court's advisement (to Howard) "[t]hat when you plead guilty, the balance of the trial would not go forward" is a clear and unambiguous reference to Howard of his constitutional right to a jury trial.

-19-

**{¶39}** Further, we find the facts of the trial court's advisement similar to those in *Ballard*.  Here, the trial court clearly explained to Howard that he had the right to confront witnesses, and that the State had the burden to prove all of the elements of the offenses beyond a reasonable doubt.  Stated better, the trial court informed Howard in a manner reasonably intelligible to Howard that the remainder of his jury trial would "not go forward" if he pled guilty.  Because the trial court's advisement occurred when Howard was *in the middle of his jury trial* (when he pled guilty) the trial court's advisement, under the totality of the circumstances, strictly complied with Crim.R. 11.

**{¶40}** Accordingly, we overrule Howard's third assignment of error.

**{¶41}** For the aforementioned reasons, Howard's first, second, and third assignments of error are accordingly overruled and we affirm the judgment of the Logan County Common Pleas Court in Appellate Case Number 8-17-01.

<u>*Fourth Assignment of Error*</u>

**{¶42}** In his fourth assignment of error, Howard contends that the trial court erred when it denied his Motion to Withdraw Plea.  Specifically, Howard argues that he should have been permitted to withdraw his pleas because: (1) at the time of the plea and sentencing the trial court misinformed him of his sex offender registration requirements; (2) Howard was not properly advised of the maximum

penalties associated with his plea; and (3) he was not advised of his right to a jury trial. We find this assignment of error to be without merit.

*Standard of Review*

{¶43} "A motion to withdraw a guilty plea is governed by Crim.R. 32.1." *Bush,* 3rd Dist. Union No. 14-2000-44, 2002-Ohio-6146, ¶ 10. Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." *Id.* "A defendant who attempts to withdraw a guilty plea after sentence has been imposed must demonstrate a manifest injustice." *Id.*

{¶44} "Although no precise definition of 'manifest injustice' exits, in general, 'manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'" *State v. Brown,* 167 Ohio App.3d 239, 2006-Ohio-3266, 854 N.E.2d 583, ¶ 5 (10th Dist.), quoting *State v. Wooden,* 10th Dist. Franklin No. 03AP-368, 2004-Ohio-588, ¶ 10. "Under this standard, a post-sentence withdrawal motion is allowable only in extraordinary cases." *Id.*

{¶45} "Additionally, when a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *Bush*, at ¶ 10 citing *State v. Engle,* 74 Ohio St.3d 525, 527, 1996-Ohio-179, 660 N.E.2d 450. If a

plea is not made knowingly, intelligently, and voluntarily, or otherwise creates a manifest injustice, then the plea is rendered unconstitutional under both the United States and Ohio Constitutions. *Id.*

*Analysis*

{¶46} Under this assignment, Howard reiterates the arguments presented in his first three assignments of error. As we have held above, the trial court substantially and/or strictly complied with the requirements of Crim.R. 11: when it informed Howard of his mandatory five-year PRC sanction; when it reclassified Howard; and when it strictly complied in its advisement of Howard's right to a trial by jury. As such, Howard presents no new or additional argument that supports his fourth assignment of error. Thus, we find that the trial court did not err in denying Howard's motion to withdraw his plea for the reasons stated herein.

{¶47} For the aforementioned reasons, Howard's fourth assignment of error is overruled and we affirm the judgment of the Logan County Common Pleas Court in Appellate Case Number 8-17-09.

***Judgments Affirmed***

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**